# United States Court of Appeals
## For the First Circuit

No. 25-1079

UNITED STATES,

Appellee,

v.

JOAN ROSADO MALDONADO,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Margaret R. Guzman, U.S. District Judge]

Before

Barron, Chief Judge,
Kayatta and Rikelman, Circuit Judges.

Sarah Varney, with whom Darren Griffis and Rudolf, Smith Griffis & Ruggieri, LLP were on brief, for appellant.
Alexia R. De Vincentis, Assistant United States Attorney, with whom Leah B. Foley, United States Attorney, was on brief, for appellee.

July 6, 2026

**BARRON, Chief Judge.** Joan Rosado Maldonado ("Maldonado") pleaded guilty to one count of being a prohibited person in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1), for which he was sentenced to a sixty-month prison term, with credit for time served, and a thirty-six-month term of supervised release. Finding merit to Maldonado's appeal, we vacate his sentence and remand to the District Court.

## I.

Because Maldonado pleaded guilty, "we draw the facts from the plea colloquy, the unchallenged portions of the presentence investigation report" ("PSR"), "and the sentencing transcript." United States v. Santa-Soler, 985 F.3d 93, 95 (1st Cir. 2021).

On September 10, 2021, two patrolling Worcester, Massachusetts police officers drove past Maldonado standing outside an apartment building. One of the officers noticed Maldonado raise his arm into the air and, shortly thereafter, heard a gunshot. Immediately, the two officers turned their patrol car around and headed towards the building. Inside, they found Maldonado standing outside the elevator bay. Upon searching him, they found a loaded firearm tucked in his satchel.

On December 2, 2021, Maldonado was indicted for being a prohibited person in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1). On March 1, 2024, he pleaded

guilty. As of that time, Maldonado had multiple prior convictions, including, as relevant, (1) a 2010 conviction for trafficking in cocaine, in violation of Mass. Gen. Laws ch. 94C, § 32E(b), and (2) a 2019 conviction for possessing with intent to distribute a Class B substance, in violation of Mass. Gen. Laws ch. 94C, § 32A(a).

Before sentencing, the United States Probation Office prepared a PSR based on the United States Sentencing Guidelines ("Guidelines"). The PSR assigned Maldonado a criminal history category of III and a total offense level of twenty-five. The PSR calculated Maldonado's base offense level as twenty-four after determining that he had "at least two [prior] felony convictions of either a crime of violence or a controlled substance offense." See U.S. Sent'g Guidelines Manual § 2K2.1(a)(2) (U.S. Sent'g Comm'n 2024) [hereinafter "U.S.S.G."]. The PSR recommended a sentencing range of seventy to eighty-seven months of imprisonment.

Maldonado objected to the PSR. In pertinent part, he argued that the base offense level was incorrectly calculated because "[n]either of the potentially applicable convictions -- for possession of a Class B substance . . . or [t]rafficking [c]ocaine . . . -- qualify as 'controlled substance[] offenses' under § 2K2.1." This was so, he continued, because "Massachusetts law more broadly define[d] cocaine to

- 3 -

include" [$^{123}$I]ioflupane ("ioflupane"), which was not a scheduled substance under federal law at the time of his federal sentencing. Thus, he contended, his base offense level should have been twenty and his resulting guideline range forty-six to fifty-seven months of imprisonment.

On December 18, 2024, the District Court informed Maldonado that it had overruled his objections. At a subsequent virtual hearing on January 2, 2025, where it noted that it had not yet made an oral or written ruling on those objections, the District Court explained that it found "the term 'controlled substance'" under Guideline § 2K2.1 to include "drugs that are regulated by the federal Controlled Substances Act" ("CSA"), 21 U.S.C. §§ 801–904, as well as those "defined by state law." In the end, it calculated his sentencing range under the Guidelines to be seventy to eighty-seven months of imprisonment, followed by up to three years of supervised release. It then sentenced him to sixty months of imprisonment, followed by three years of supervised release.

During the December hearing, the District Court also discussed the various conditions that would accompany Maldonado's term of supervised release. It recounted its imposition of a "special condition[]" that Maldonado not "knowingly communicate . . . with members . . . of any street gang." It determined, however, the language of that condition "to be not as

- 4 -

helpful as the articulation that" it then provided: Maldonado was "not to associate with anyone who" he knew or should know was "engaged in any criminal activity whatsoever."

In the written judgment that the District Court issued following the hearing, however, it included both a "special condition[]" proscribing Maldonado from "knowingly communicat[ing] or otherwise interact[ing] with any members, affiliates, and/or associates of any street gang including, but not limited to, the Latin Kings" and a "standard condition[]" precluding him from "communicat[ing] or interact[ing] with" anyone he knows is "engaged in criminal activity."

Separately, at the December hearing, the District Court instructed Maldonado that he was "to remain away from any possession of a firearm. None." It continued by adding that "anyone [he] kn[ew], who is in possession of a firearm, is someone [he could not] be found with," regardless of whether they were a "gang member" or whether they "legally possess[ed] a firearm."

At the subsequent January hearing, Maldonado objected to this firearm-related condition. In objecting, he construed that condition as "restricti[ng]" him from "having any association with anyone who legally owns a firearm." The District Court overruled this objection as well.

Nonetheless, the written judgment -- with respect to this objection -- contained only the "standard condition[]" that

Maldonado not "own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon." It comparatively did not prohibit him from "be[ing] found with" anyone he knew to be "in possession of a firearm."

Maldonado timely appealed.

## II.

We review a District Court's interpretation of the Guidelines de novo. United States v. Berroa, 856 F.3d 141, 162 (1st Cir. 2017).

## III.

We begin and end with Maldonado's challenge to the District Court's calculation of his sentencing range. At sentencing, the District Court determined that Maldonado's base offense level was twenty-four pursuant to Guideline § 2K2.1(a)(2). That Guideline directs a District Court to apply a base offense level of twenty-four "if the defendant committed any part of the instant offense subsequent to sustaining at least two felony convictions of . . . a controlled substance offense." U.S.S.G § 2K2.1(a)(2). A "controlled substance offense," in turn, is so defined:

> [A]n offense under federal or state law, punishable by imprisonment for a term exceeding one year, that --
>
> (1) prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit

- 6 -

substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense; or

(2) is an offense described in 46 U.S.C. § 70503(a) or § 70506(b).

Id. § 4B1.2(b); see id. § 2K2.1 cmt. n.1 ("'Controlled substance offense' has the meaning given that term in § 4B1.2(b) . . . .").

Maldonado argues that the District Court erred in applying a base offense level of twenty-four because his prior convictions did not qualify as convictions of a "controlled substance offense" for purposes of the Guidelines. In so arguing, he states that "the District Court improperly relied upon [his] two prior Massachusetts 'cocaine' convictions as the predicates for application of [§ 2K2.1(a)(2)]." These cocaine convictions are, as mentioned previously, (1) a 2010 conviction for trafficking in cocaine, in violation of Mass. Gen. Laws ch. 94C, § 32E(b), and (2) a 2019 conviction for possessing with intent to distribute a Class B substance, in violation of Mass. Gen. Laws ch. 94C, § 32A(a).[1]

---

[1] Below, Maldonado's objection to the application of § 2K2.1(a)(2) was based on these two convictions as well. The government, however, also referenced Maldonado's 2010 conviction for conspiring to violate drug laws, in violation of Mass. Gen. Laws ch. 94C, § 40. The District Court, finding that the two convictions to which Maldonado referred were valid predicates, did not resolve whether, under its theory, the 2010 conspiracy conviction would also qualify as a conviction of a "controlled substance offense." Neither party, on appeal, argues that this conviction affects our analysis.

Maldonado argues as follows. He contends that the definition of "controlled substance offense" incorporated in Guideline § 2K2.1(a)(2) encompasses "only those substances regulated by the . . . CSA." At all relevant times, however, Massachusetts has scheduled ioflupane -- a substance derived from cocaine via ecgonine -- as a Class B drug, see Mass. Gen. Laws ch. 94C, § 31(Class B)(a)(4), whereas the federal government has not scheduled ioflupane as a controlled substance since 2015, see 21 C.F.R. § 1308.12(b)(4)(ii) (Sept. 11, 2015); Schedules of Controlled Substances: Removal of [123I]Ioflupane From Schedule II of the Controlled Substances Act, 80 Fed. Reg. 54715, 54717 (Sept. 11, 2015). Therefore, Maldanado argues, "[b]ecause the Massachusetts definition of 'cocaine' is broader than its federal counterpart" -- i.e., "the statutes are not a categorical match" -- his "prior convictions are not convictions for a 'controlled substance offense,' as defined by" Guideline § 4B1.2(b).[2]

---

[2] Guideline § 2K2.1(a)(2) requires that a defendant have two prior controlled substance offense convictions for the enhancement to apply. Here, one of these convictions is asserted to be Maldonado's 2010 conviction for trafficking in cocaine. Neither party argues that the timing of that conviction matters in this case. Nevertheless, given our holding in United States v. Fulcar, we note that the timing that matters is the time of his federal sentencing. No. 25-1524, slip op. at 32 (1st Cir. July 6, 2026) (applying the time-of-federal-sentencing approach).

- 8 -

The government, for its part, argues that the term "'controlled substance' within the definition of 'controlled substance offense'" in Guideline § 4B1.2(b) "refers to a substance regulated by either federal or state law." Thus, because there is no dispute that, under Massachusetts law, ioflupane was "controlled" at all relevant times, the government contends that it constitutes a "controlled substance," such that his Massachusetts law convictions constitute convictions of a controlled substance offense, as defined by Guideline § 4B1.2(b).

We agree with Maldonado's interpretation. For the reasons set forth in United States v. Fulcar, No. 25-1524, slip op. at 33-45 (1st Cir. July 6, 2026), we find that the term "controlled substance" encompasses only substances regulated by the CSA. Therefore, because the Massachusetts definition of "cocaine" was not a categorical match to the CSA at the time of Maldonado's federal sentencing,[3] his two pertinent state convictions do not qualify as convictions of a "controlled substance offense," as defined by Guideline § 4B1.2(b). We therefore must vacate and remand his prison sentence, as there is no suggestion that the District Court "'inevitably' would have imposed the same sentence" absent this procedural error. United

---

[3] The government does not contest that the categorical approach applies. See United States v. Crocco, 15 F.4th 20, 21 (1st Cir. 2021) (applying the categorical approach where "neither" party "points to the modified approach").

- 9 -

States v. Rosa-Borges, 174 F.4th 281, 290 (1st Cir. 2026) (quoting United States v. Diaz, 285 F.3d 92, 98 (1st Cir. 2002)).  Indeed, it made clear that it could not "say what [it] would have done if the PSR was different."  See id. ("If we are not convinced that the error was harmless, we must vacate and remand.").[4]

**IV.**

For the foregoing reasons, we **vacate** Maldonado's sentence and **remand** the case for resentencing consistent with this opinion.

---

[4] Maldonado's briefing on appeal also attacks two of his supervised release conditions -- one of which the government concedes was imposed in error -- based, in part, on the daylight between the oral and written sentencing pronouncements. See supra Part I.  But, because we are vacating his sentence, we need not reach the questions that his challenges to the supervised release conditions occasion.  After all, insofar as the conditions were ambiguous, we anticipate that the District Court will clear up any muddied waters in its imposition of a new sentence.